UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

       - v. -

ERIC BOLTON,

            Defendant.

22 Cr. 330 (KMK)

**THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
ERIC BOLTON'S MOTION PURSUANT TO 28 U.S.C. § 2255**

DAMIAN WILLIAMS
United States Attorney
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007

Reyhan Watson
Assistant United States Attorney
   *Of Counsel*

# TABLE OF CONTENTS

I.      Preliminary Statement........................................................................................ 1

II.     Background ....................................................................................................... 1

        A.      The Prior Federal Case and Bolton's Supervised Release ..................... 1

        B.      Offense Conduct ................................................................................... 2

        C.      Bolton's Guilty Plea ............................................................................. 3

        D.      The Parties' Sentencing Submissions ................................................... 4

        E.      Sentencing ........................................................................................... 4

III.    Bolton's 2255 Motion ...................................................................................... 5

IV.     Applicable Law ................................................................................................ 6

        A.      Relief under 28 U.S.C. § 2255 ............................................................. 6

        B.      Guilty Plea Limitations on Section 2255 Relief .................................... 7

        C.      Procedural Default ................................................................................ 8

V.      Argument .......................................................................................................... 9

        A.      The Second Amendment Claim is Procedurally Defaulted ................... 9

        B.      The Second Amendment Claim is Meritless ......................................... 9

                1.      *Heller*, *McDonald*, and *Bogle* Confirm the Constitutionality of
                        Section 922(g)(1)'s Prohibition on Felons Possessing Firearms. ........... 10

                2.      *Bruen* Reaffirmed the Constitutionality of Section 922(g)(1)
                        and Does Not Undercut the Second Circuit's Decision in *Bogle*. ........... 11

                3.      Section 922(g)(1) Is Constitutional as Applied to Bolton,
                        Notwithstanding *Range* and *Bullock*........................................................ 13

        C.      Bolton's Fourth Amendment Claim is Waived, Barred, and Meritless ............... 16

        D.      The Sixth Amendment Claims Should Be Denied ............................... 20

                1.      The Suppression-Based Sixth Amendment Claim is Barred ................... 21

                2.      The Sentencing-Based Sixth Amendment Claim is Meritless ................. 22

        E.      Bolton's 2255 Motion Should Be Denied Without a Hearing ............................. 23

VI.     Conclusion ...................................................................................................... 24

## I.    Preliminary Statement

Eric Bolton pleaded guilty to possessing a firearm while being a felon, in violation of 18 U.S.C. § 922(g)(1). Throughout his case, Bolton admitted possessing a firearm, explained why he possessed a firearm, and pleaded this Court for leniency. At sentencing, he said, "I want to take full responsibility for my actions." This Court, after considering a lengthy and "well presented" sentencing submission by Bolton's counsel, issued a well below-guidelines sentence of 27 months' incarceration and three years' supervised release. Now *pro se*, Bolton seeks to vacate his conviction under 28 U.S.C. § 2255. He argues that the statute of conviction infringes on his Second Amendment rights. He challenges the search that resulted in the discovery of the firearm. And he attacks his own counsel, claiming he received ineffective assistance despite his stated satisfaction with counsel and the objectively favorable sentence counsel helped him obtain. As discussed below, Bolton's claims are waived, barred, or meritless. Bolton's motion should be denied.

## II.    Background

### A.    The Prior Federal Case and Bolton's Supervised Release

On March 6, 2017, Eric Bolton pleaded guilty in this District to a two-count Information charging conspiracy to distribute and possess with intent to distribute crack cocaine and MDMA, in violation of 21 U.S.C. § 846, and possession of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). *See United States v. Eric Bolton*, No. 16 Cr. 372 (S.D.N.Y.) ("Prior Federal Case"); PSR ¶ 35.[1] On June 13, 2018, Bolton was sentenced and started a five-year term of supervised release. Prior Federal Case, ECF No. 203; PSR ¶¶ 7, 35.

---

[1] Citations to the "PSR" refer to the United States Probation Office's Pre-Sentence Investigation Report, dated June 29, 2023, prepared in connection with this case. (ECF No. 23).

Among the terms of Bolton's supervised release was the condition (the "Search Condition") that he submit to warrantless searches by the United States Probation Office ("Probation"):

> "The defendant shall submit his person, residence, place of business, vehicle, and any property, computer (as defined in 18 U.S.C. 1030(e)(1)), electronic communications, data storage devices and/or other media under his control to a search on the basis that the probation officer has reasonable suspicion that contraband or evidence of a violation of the conditions of the defendant's supervised release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. The defendant shall inform any other residents that the premises may be subject to search pursuant to this condition."

Prior Federal Case, ECF No. 203 at 6; *see also* PSR ¶ 7. Bolton was also required to live at a place approved by Probation, notify Probation of any change in residence, and allow Probation to visit him "at any time at [his] home or elsewhere." Prior Federal Case, ECF No. 203 at 5.

B.    Offense Conduct

On or about April 18, 2022, while Bolton was on supervised release, Probation searched, pursuant to the Search Condition, the apartment of Bolton's girlfriend where he had been staying. PSR ¶¶ 8–10. During the search, Probation found—inside a hamper in the bedroom Bolton shared with his girlfriend—a gray backpack. PSR ¶ 10. Inside the backpack, Probation found, among other things, a debit card in Bolton's name, a set of false teeth belonging to Bolton, and a loaded Taurus G2S 9mm handgun. *Id.* As a felon, Bolton was not allowed to possess that firearm. Probation therefore filed a violation of supervised release ("VOSR") petition against Bolton in the Prior Federal case.[2] Then, on June 13, 2022, Bolton was charged by a one-count indictment ("Indictment") for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

---

[2] The VOSR petition, as amended, alleged five specifications relating to the following conduct: (1) possession of a firearm while being a felon (the instant offense); (2) falsely reporting his car

C.    Bolton's Guilty Plea

On March 22, 2023, Bolton appeared before the Hon. Judith C. McCarthy, U.S.M.J., and pleaded guilty pursuant to a *Pimentel* letter to Count One of the Indictment. PSR ¶ 4. Judge McCarthy thoroughly questioned Bolton, among other things, on his understanding of the parties' respective positions about his possible sentence and the Government's position in the *Pimentel* letter. The court explained that, depending on whether the sentencing court determined that the ACCA enhancement applies, Bolton could face either a mandatory minimum term of imprisonment of 15 years or, if the ACCA enhancement does not apply, a maximum term of imprisonment of 10 years, which Bolton acknowledged he understood. Plea Transcript, ECF No. 22 ("Plea Tr."), at 19:16–20:2.

At his plea allocution, Bolton confirmed that no one "threatened," "coerced," or "pressured [him] improperly in order to get [him] to plead guilty to this charge." *Id.* at 28:10–13. He also confirmed that he was satisfied with his attorney's representation of him and that he told his attorney everything he knew about the case. *Id.* at 11:1–6.

Bolton also admitted his guilt. In his own words, Bolton said, under oath:

> I possessed a Taurus G2S .9 mm handgun in Yorktown, New York, which I understood was located in Southern District of New York. I possessed the handgun recognizing I am a convicted felon, who has previously been sentenced to more than one year in prison; and therefore . . . it was illegal for me to possess a firearm.

Plea Tr. 28:22–29:3. Bolton also admitted that he committed these acts "knowingly and willfully" and knew "it was against the law to do what [he was] doing when [he] did it." *Id.* at 29:8–13.

On July 10, 2023, this Court entered an order accepting Bolton's guilty plea. ECF No. 24.

---

stolen in January 2021; (3) using marijuana at various times in 2021 and 2022; (4) failing to notify probation of a change in employment; and (5) traveling out of District to Florida. *See* Amended VOSR, dated April 21, 2022, in Prior Federal Case.

D.    The Parties' Sentencing Submissions

On July 11, 2023, Bolton, through counsel, filed his sentencing submission. ECF No. 25.

In his submission, he made the following arguments:

- His conviction should be vacated and the indictment dismissed as unconstitutional as applied to him under the Second Amendment;

- His total offense level calculation should be 12, arguing that his prior criminal history does not qualify him as either an armed career criminal under 18 U.S.C. § 924(e) (the "Armed Career Criminal Act" or "ACCA") or a career offender under the Federal Sentencing Guidelines Manual, nor does it warrant a guidelines base offense enhancement of six points under U.S.S.G. § 2K2.1(a)(4)(A) and (6); and

- His criminal history calculation should be 9, placing him in category IV, based a calculation of (a) one rather than three criminal history points because he completed less than 30-months' incarceration on a sentence he received for a 2014 criminal sale of a controlled substance conviction and (b) one rather than two status points for having committed the instant offense while on federal supervised release, invoking the not-yet-effective amended Guidelines.

Based on these arguments, Bolton calculated a Guidelines range of 21 to 27 months. Meanwhile, Probation calculated a Guidelines range of 46 to 57 months, PSR ⁋ 73, and the Government calculated 70 to 87 months while submitting that a sentence within Probation's Guidelines range would be sufficient. ECF No. 26 at 5.

In response to Bolton's Second Amendment argument, the Government filed a separate opposition, which it incorporates herein by reference. *See* ECF No. 27.

E.    Sentencing

On August 1, 2023, Bolton was sentenced. At sentencing, Bolton addressed the Court, stating "First, I want to take full responsibility for my actions." Sent'g Tr. at 31:21–22. He explained that he got his girlfriend the gun out of a concern for her safety:

> DEFENDANT: "[T]he girl I was dating . . . was shot at by the father of her daughter and she testified against him in a federal trial. Her car tires were slashed, her car window was broken, and she received multiple threats, and asked if I can help her get a gun, and I, I did

4

> that. She asked for that so that she can keep it in her home in case
> someone tried to harm her and her kids.
>
> I know it was a stupid decision, but I helped to get the gun
> because I felt for her safety and well-being. I know it was a horrible
> decision and that decision cost me dearly.

*Id.* at 32:9–17.

After considering the parties' sentencing submissions and arguments at sentencing, the Court rejected Bolton's Second Amendment argument. Sent'g Tr. at 22:19–24:1. The Court then calculated Bolton's total offense level to be 17, which included a 3-point reduction due to Bolton's "acceptance of responsibility as reflected in Mr. Bolton's timely plea." *Id.* at 35:24–36:2. The Court calculated Bolton's criminal history score to be 11, placing him in criminal history category V. *Id.* at 35:21–37:1. As a result, the Court calculated a guidelines range of 46 to 57 months. *Id.* at 36:24–37:1. The Court noted, however, that "a sentence within the guideline range is more than is necessary." *Id.* at 42:12–13; 43:6–9.

The Court sentenced Bolton to a total term of incarceration of 29 months, comprising 27 months on the Section 922(g)(1) charge and two more months on the VOSR specifications.

## III.    Bolton's 2255 Motion

On December 5, 2023, Bolton filed a Motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (the "Motion," ECF No. 30), alleging four grounds:

First, Bolton argues that his conviction under 18 U.S.C. 922(g) violates his Second Amendment right under the decisions set forth in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023), *McDonald v. City of Chicago*, 561 U.S. 742 (2010), and *United States v. Bullock*, No. 18 Cr. 165 (CWR) (FKB), 2023 WL 4232309 (S.D. Miss. June 28, 2023). *See* Mot. at 4. In support, Bolton alleges that he is a U.S. citizen and "part of the people" protected by the Second Amendment, he was "obeying the law

going to school" and with a "full time job," and, as a result, the Second Amendment "allows [him] to keep and have a firearm in [his] home for self defense and to protect [his] family." *Id.* This will be called the "Second Amendment Claim."

Second, Bolton argues that Probation and other law enforcement officers violated his Fourth Amendment rights when they conducted the April 18, 2022, search of his girlfriend's apartment and seizure of the gun that he admitted illegally possessing. In support, Bolton alleges that "[t]here was no search warrant," he "never asked nor told probation that [he] was changing [his] address," and Probation "[n]ever did any [r]esidence [v]erification or approved of [him] changing locations to live at." *Id.* at 6. This will be called the "Fourth Amendment Claim."

Third, Bolton argues his Sixth Amendment rights were violated because his counsel provided ineffective assistance by not moving to suppress "evidence." Mot. at 8. In support, Bolton alleges that "[t]he search was illegal," his girlfriend "told [his] lawyer the gun was hers before charges were brought," his lawyer "would not challenge the search or anything [he] asked," and that he "asked for a speedy trial [and his] lawyer failed to do any job [he] asked." *Id.*. This will be called the "Suppression-Based Sixth Amendment Claim."

Finally, Bolton raises another Sixth Amendment ineffective assistance of counsel claim based on his counsel's performance at sentencing. In support, he alleges that counsel "[f]ailed to object to errors in [his] PSR/PSI" and that his "criminal history was not correct" and he "should have been in a lower category and lower offense level"—issues he claims "would have resulted in less time." *Id.* This will be called the "Sentencing-Based Sixth Amendment Claim."

## IV.    Applicable Law

### A.    Relief under 28 U.S.C. § 2255

Under Section 2255, a prisoner who is in custody serving a federal sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence" on the grounds

that it was "imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). To obtain relief, the prisoner must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000). "A district court's discretion to grant relief under § 2255 must be exercised sparingly, for such applications are in tension with society's strong interest in the finality of criminal convictions." *Espada v. United States*, No. 10 Cr. 985 (AMD), 2023 WL 3126412, 2023 U.S. Dist. LEXIS 73624, *10 (E.D.N.Y. Apr. 27, 2023) (quotations omitted).

If "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." *Seabrook v. United States*, No. 22-841, 2023 WL 7489961, 2023 U.S. App. LEXIS 30072, *5 (2d Cir. Nov. 13, 2023). "A district court has the power to dismiss the petition on the merits without prior notice if it is clear that the petitioner is not entitled to relief." *Id.* (cleaned up).

    B.    <u>Guilty Plea Limitations on Section 2255 Relief</u>

Because of the importance of preserving the finality of criminal convictions, "[h]abeas review is an extraordinary remedy." *Bousley v. United States*, 523 U.S. 614, 621 (1998). "[T]he concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *Id.* As the Supreme Court explained:

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

*United States v. Broce*, 488 U.S. 563, 569 (1989).

"It is well settled that a defendant's plea of guilty admits all of the elements of a formal criminal charge, and, in the absence of a court-approved reservation of issues for appeal, waives all challenges to the prosecution except those going to the court's jurisdiction." *Hayle v. United States*, 815 F.2d 879, 881 (2d Cir. 1987) (internal citations omitted); *see also United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings."). That said, under certain circumstances, a prisoner who pleaded guilty can challenge the statute of conviction as unconstitutional and assert ineffective assistance claims around the validity of his plea. *See Class v. United States*, 583 U.S. 174, 178 (2018) (constitutionality of the statute of conviction); *United States v. Coffin*, 76 F.3d 494, 498 (2d Cir. 1996) (ineffective assistance).

C.    Procedural Default

Habeas review does not replace direct appeal. *Bousley*, 523 U.S. at 621. "In general, a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal." *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011). This principle is called "procedural default," which "is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

To overcome procedural default, a defendant must show either (1) "cause and actual prejudice," or (2) "actual innocence." *Bousley*, 523 U.S. at 622. "Cause" is "something *external* to the petitioner" that "cannot be fairly attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (emphasis in original). And "prejudice" requires not just that a defendant show "a possibility of prejudice" but also errors that "worked to his actual and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). As for the "actual

innocence" exception, it hinges on a showing of "factual innocence" and is meant to avoid grave miscarriages of justice. *Bousley*, 523 U.S. at 623.

**V.    Argument**

    A.    <u>The Second Amendment Claim is Procedurally Defaulted</u>

Bolton failed to raise his Second Amendment Claim on direct appeal and thus is procedurally barred from raising it on collateral review. The parties extensively briefed the constitutionality of 18 U.S.C. 922(g)(1) and the Court analyzed, and denied, Bolton's constitutional challenge. Although Bolton preserved that issue for appeal at sentencing, he failed to file one. His failure to do so is a procedural default. *See Navarro v. Supt. Timothy McCarthy*, No. 20 Civ. 06094 (EAW), 2023 WL 8375858, at *21 (W.D.N.Y. Dec. 4, 2023) (dismissing Second Amendment claim under 28 U.S.C. § 2254 as procedurally defaulted).

As Bolton does not allege "actual innocence," he can overcome his procedural default only by showing cause and prejudice. He cannot meet that threshold. His alleged reason for not filing an appeal is that his lawyer declined to assist him. Bolton, however, does not allege that he instructed his lawyer to file a notice of appeal, nor does he raise an ineffective assistance claim relating to counsel's failure to file an appeal. By Bolton's own admission, his counsel advised him that "[he] would have to do it on [his] own or with the help of someone other than [his counsel]." Mot. at 5. Because Bolton chose neither, he is solely to blame for his failure to file an appeal and thus cannot establish cause. *See Coleman*, 501 U.S. at 753 ("cause" must be something that "cannot be fairly attributed to" the prisoner). Nor can Bolton establish prejudice, because, as discussed below, his Second Amendment Claim is unlikely to succeed on the merits.

    B.    <u>The Second Amendment Claim is Meritless</u>

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S.

Const. amend. II. Under 18 U.S.C. § 922(g)(1), it is unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. Bolton relies on four cases to support his Second Amendment Claim—*Bruen*, *McDonald*, *Range*, and *Bullock*—and argues that, because he is "part of the people," Section 922(g)(1) violates his Second Amendment right "to keep and have a firearm in [his] home for self defense and to protect [his] family." Mot. at 4. He is wrong.

        1.    *Heller*, *McDonald*, and *Bogle* Confirm the Constitutionality of Section 922(g)(1)'s Prohibition on Felons Possessing Firearms.

The Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 561 U.S. 742 (2010) each confirm Section 922(g)(1)'s constitutionality. In *Heller*, the Supreme Court held that the Second Amendment guarantees the right of "law-abiding, responsible citizens" to possess arms for self-defense. 554 U.S. at 635. The Court emphasized that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 626. In *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (plurality), the Supreme Court extended *Heller* to state and local governments, while "repeat[ing] [the] assurances" that it "made . . . clear" in *Heller* that its "holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.'" 561 U.S. at 786.

Moreover, the Second Circuit in *United States v. Bogle*, 717 F.3d 281 (2d Cir. 2013) (per curiam), which followed *Heller* and *McDonald*, and expressly incorporated as law their discussions ratifying "longstanding prohibitions on the possession of firearms by felons," held that Section 922(g)(1) "is a constitutional restriction on the Second Amendment rights of convicted felons." *Bogle*, 717 F.3d at 281–82. Similarly, "[f]acial challenges to the statute's constitutionality

have failed in every circuit to have considered the issue." *Medina v. Whitaker*, 913 F.3d 152, 155 (D.C. Cir. 2019) (collecting cases), *cert. denied*, 140 S. Ct. 645 (2019).

>       2.    *Bruen* Reaffirmed the Constitutionality of Section 922(g)(1) and Does Not Undercut the Second Circuit's Decision in *Bogle*.

In *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), the Supreme Court held that "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context"; rather, the "firearms regulation [must be] part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." 597 U.S. at 19. Not only did *Bruen* reaffirm *Heller* and *McDonald*, but six justices emphasized that *Bruen* did not upset *Heller*'s and *McDonald*'s reassurances that certain firearms regulations, such as prohibitions on the possession of firearms by felons, are constitutional. *See id.* at 72 (Alito, J., concurring) ("Nor have we disturbed anything that we said in *Heller* or *McDonald* . . . *,* about restrictions that may be imposed on the possession or carrying of guns."); *id.* at 80 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("Properly interpreted, the Second Amendment allows a 'variety' of gun regulations," including the "longstanding prohibitions on the possession of firearms by felons" discussed in *Heller* and *McDonald* (quoting *Heller*, 554 U.S. at 626)); *id.* at 129 (Breyer, J., joined by Sotomayor and Kagan, JJ., dissenting) ("I understand the Court's opinion today to cast no doubt on that aspect of *Heller*'s holding" permitting felons to be prohibited from possessing firearms).[3]

---

[3] Justices Thomas and Gorsuch also agreed, two years before *Bruen*, that *Heller* and *McDonald* "recognized that history supported the constitutionality of some laws limiting the right to possess a firearm, such as laws banning firearms from certain sensitive locations and prohibiting possession by felons and other dangerous individuals." *N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525, 1540–41 (2020) (Alito, J., joined by Thomas and Gorsuch, JJ., dissenting). Thus, eight of the nine members of the *Bruen* Court have explicitly approved of *Heller*'s and *McDonald*'s reassurances of the continued constitutionality of statutes criminalizing the possession of firearms by felons.

Thus, as this Court and as other judges in this District have concluded, the clear reasoning of *Heller*, *McDonald*, and *Bruen* forecloses any argument that Section 922(g)(1) is facially unconstitutional. *See United States v. Patterson*, No. 19 Cr. 231 (CS) (S.D.N.Y. Sept. 9, 2022); *United States v. Hampton*, No. S2 21 Cr. 766 (JPC), 2023 WL 3934546 (S.D.N.Y. June 9, 2023); *United States v. Garlick*, No. 22 Cr. 540 (VEC), 2023 WL 2575664 (S.D.N.Y. Mar. 20, 2023); *United States v. Centeno*, No. 22 Cr. 542 (DLC) (S.D.N.Y. Feb. 6, 2023); *United States v. King*, 2022 WL 5240928, at *4–5 (S.D.N.Y. Oct. 6, 2022); *United States v. Adams*, No. 20 Cr. 628 (AKH) (S.D.N.Y. Aug. 10, 2022); *United States v. Maurice*, No. 22 Cr. 48 (VB) (S.D.N.Y. Jul. 14, 2022). These decisions join the Tenth Circuit, Eighth Circuit, and well over 100 district court decisions since *Bruen* that have upheld the constitutionality of Section 922(g)(1). *See Vincent v. Garland*, 80 F.4th 1197, 1202 (10th Cir. 2023); *United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023); *Vincent v. Garland*, Br. for Defs.-Appellees at 17 n.5, No. 21-4121 (10th Cir. Jan. 17, 2023) (collecting cases).

Accordingly, nothing in *Bruen* undercuts *Bogle*. The Second Circuit did not employ means-end scrutiny in *Bogle*; rather, it applied *Heller* and *McDonald* to conclude that "recent developments in Second Amendment jurisprudence should not 'be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.'" *Bogle*, 717 F.3d at 281 (quoting *Heller*, 554 U.S. at 626). And as the Supreme Court has repeatedly explained, including in *Bruen* itself, the reassurances in *Heller* and *McDonald* were supported by history. *Bruen*, 597 U.S. at 21 (explaining that in *Heller*, the Court "relied on the historical understanding of the [Second] Amendment to demark the limits on the exercise of that right"); *City of New York*, 140 S. Ct. at 1540–41 (Alito, J., joined by Thomas and Gorsuch, JJ., dissenting) (explaining that *Heller* and *McDonald* "recognized that history supported the constitutionality of some laws limiting the

right to possess a firearm, such as laws banning firearms from certain sensitive locations and prohibiting possession by felons and other dangerous individuals"); *Heller*, 554 U.S. at 626, 635 (acknowledging that "permissible" regulations, including the "longstanding prohibitions on the possession of firearms by felons," were supported by "historical analysis" and "historical justifications"). By reaffirming *Heller* and *McDonald*, and counseling courts to adhere more closely to those cases, *Bruen* therefore effectively reaffirmed, and in any event did not overrule, *Bogle*, which drew directly from *Heller* and *McDonald*.

Every other court in this District has held that *Bogle* remains good law after *Bruen*. *See, e.g.*, *United States v. Fayton*, No. 23 Cr. 00001 (JLR), 2023 WL 8275924, at *5 (S.D.N.Y. Nov. 30, 2023) ("[T]he Court is aligned with every other Judge in this District who has written on this issue and concluded that *Bogle* survives *Bruen*.").[4] Because *Bogle* remains good law, the Court "need not analyze the nation's history of regulation of firearms with respect to convicted felons." *United States v. Grimes*, 2023 WL 8473761, at *3 (E.D.N.Y. Dec. 7, 2023).[5]

3. Section 922(g)(1) Is Constitutional as Applied to Bolton, Notwithstanding *Range* and *Bullock*.

Bolton cites two out-of-circuit decisions, presumably to support an as-applied Second Amendment challenge to his conviction: *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023)

---

[4] *See also United States v. Mitchell*, 2023 WL 8006344, at *2 (S.D.N.Y. Nov. 17, 2023); *United States v. Ford*, No. 23 Cr. 00107 (LGS), 2023 WL 7131742, at *2 (S.D.N.Y. Oct. 30, 2023); *United States v. Nelson*, No. 22 Cr. 00436 (JGK), 2023 WL 6520378, at *2–3 (S.D.N.Y. Oct. 4, 2023); *United States v. Craft*, No. 23 Cr. 00178 (PMH), 2023 WL 6215326, at *3 (S.D.N.Y. Sept. 25, 2023); *United States v. Davila*, —— F. Supp. 3d ——, 2023 WL 5361799, at *2 (S.D.N.Y. Aug. 22, 2023); *United States v. Hampton*, 2023 WL 3934546, at *12–13 (S.D.N.Y. Jun. 9, 2023); *Garlick*, 2023 WL 2575664, at *5; *United States v. Barnes*, No. 22 Cr. 00043 (JPO), 2023 WL 2268129, at *2 (S.D.N.Y. Feb. 28, 2023); *United States v. King*, 634 F. Supp. 3d 76, 83 (S.D.N.Y. 2022).

[5] To the extent the Court is inclined to do so, the Government relies on the historical arguments made in its pre-sentencing opposition. *See* ECF No. 27, at 9–22.

(en banc) and *United States v. Bullock*, No. 3:18 Cr. 165 (CWR), ⸺ F. Supp. 3d ⸺, 2023 WL

4232309 (S.D. Miss. June 28, 2023).[6]

        To start, this Court should not follow *Range* and *Bullock* but the many Circuit courts that

have suggested—if not outright held—that Section 922(g)(1) is not subject to an as-applied Second

Amendment challenge. Two federal circuit courts have concluded, post-*Bruen*, that Section

922(g)(1) is constitutional in all its applications, thus foreclosing as-applied challenges. *See*

*Vincent v. Garland*, 80 F.4th 1197, 1202 (10th Cir. 2023) (holding there is "no basis to draw

constitutional distinctions based on the type of felony involved" for a § 922(g)(1) conviction);

*United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023) (holding "there is no need for felony-

by-felony litigation regarding the constitutionality of § 922(g)(1)"). Although the Second Circuit

has yet to address the issue post-*Bruen*, the court in *Bogle* broadly held that "Section 922(g)(1) is

a constitutional restriction on the Second Amendment rights of convicted felons." *Bogle*, 717 F.3d

at 282. Other Circuits have suggested, although pre-*Bruen*, that an individualized inquiry is not

required. *See, e.g.*, *United States v. Massey*, 849 F.3d 262, 265 (5th Cir. 2017) (rejecting as-applied

challenge without analyzing specific prior felony conviction); *United States v. Rozier*, 598 F.3d

768, 771 (11th Cir. 2010) (*Heller* "suggests that statutes disqualifying felons from possessing a

firearm under any and all circumstances do not offend the Second Amendment").

        Even if Bolton could maintain an as-applied challenge to Section 922(g)(1), neither *Range*

nor *Bullock* moves the needle. In *Range*, the Third Circuit held that Section 922(g)(1) is

unconstitutional only as applied to the defendant in that case, given his violation of a Pennsylvania

offense prohibiting the making of false statements to obtain food stamps, noting that "the

---

[6] *Range* and *Bullock* involved as-applied constitutional challenges. As set forth above, *Bogle*,
which remains good law, forecloses a facial challenge to Section 922(g)(1). *See Fayton*, 2023 WL
8275924, at *5 (declining to follow *Range* and *Bullock* as non-binding and contrary to *Bogle*).

Government has not shown that our Republic has a longstanding history and tradition of depriving people like [the defendant] of their firearms." 69 F.4th. at 106. In so holding, the court expressly disregarded the Supreme Court's assurances in *Heller*, *McDonald*, and *Bruen* as "dicta." *Id.* at 101. Nonetheless, the Court emphasized that its decision was a "narrow" one based on the specific facts in that case. *Id.* at 106.

Bolton's reliance on *Range* is unavailing. *Range* is an "outlier" post-*Bruen* decision that is "not binding in this Circuit." *United States v. Rico Gonzalez*, No. 1:23 Cr. 18 (MKV), 2024 WL 96517, at *5 (S.D.N.Y. Jan. 9, 2024). Moreover, as this Court correctly noted at sentencing, even if *Range* were correct in sustaining an as-applied constitutional challenge to Section 922(g)(1), that decision "was a narrow one" and does not apply to Bolton's circumstances. Sent'g Tr. 23:6–16. The defendant in *Range* was convicted of a non-violent, non-dangerous misdemeanor for which he had not been incarcerated. *See Range*, 69 F.4th at 99. In contrast, Bolton has multiple narcotics and weapons convictions, including a conviction in this District for narcotics conspiracy, in violation of 21 U.S.C. § 846, and for possession of a firearm in furtherance of that drug trafficking crime, in violation of 18 U.S.C. § 924(c), as well as a robbery conviction—a crime of violence. Therefore "this Nation's historical tradition of firearm regulation" supports depriving Bolton of his right to bear arms. *See Bruen*, 597 U.S. at 33.

In *Bullock*, a court in the Southern District of Mississippi—relying on *Range*—upheld an as-applied constitutional challenge to Section 922(g)(1) for a felon convicted of aggravated assault and manslaughter. *Bullock* has been widely criticized as wrongly decided in courts across the country, including within its own circuit, and should therefore not be followed. *See, e.g.*, *United States v. Bazile*, No. Cr. 23-34, 2023 WL 7112833, at *4 (E.D. La. Oct. 27, 2023) ("Numerous courts have addressed the arguments raised in *Bullock* and found them to be unconvincing, as does

15

this Court."); *see also United States v. Brown*, No. 1:22 Cr. 704, 2023 WL 7323335, at *3 n.2
(N.D. Ohio Nov. 7, 2023); *United States v. Jackson*, No. 4:23 Cr. 0089 (GHD) (JMV), 2023 WL
6881818, at *4 (N.D. Miss. Oct. 18, 2023); *United States v. Haynes*, No. 3:23 Cr. 00071-01, 2023
WL 5673962, at *5 (W.D. La. Sept. 1, 2023).

    C.   <u>Bolton's Fourth Amendment Claim is Waived, Barred, and Meritless</u>

Bolton's Fourth Amendment Claim challenges the legality of law enforcement's search of
his girlfriend's apartment and seizure of the gun. These are all arguments he raised as early as in
the initial appearance and thus, by pleading guilty, Bolton has waived them.

On July 21, 2022, Bolton's counsel challenged Probation's predicate for the search:

> DEFENDANT'S COUNSEL: "Mr. Bolton was living with his
> mother, he was not living with his girlfriend, so my understanding
> is the predicate for the search was that Probation was saying he was
> living with his girlfriend. He was not, and my understanding from
> the probation report was that they even noted that he was living with
> his mother and would occasionally stay at his girlfriend's house."

Transcript of Initial Appearance, ECF No. 16 ("Initial Appearance Tr."), at 9:7–10 (Jul. 21, 2022).

Bolton's counsel also questioned whether the gun belonged to Bolton or his girlfriend, and
expressly raised the assertion Bolton now makes that it was his girlfriend's gun:

> DEFENDANT'S COUNSEL: "Mr. Willstatter [Bolton's prior
> counsel] had spoken to his girlfriend and his girlfriend had said that
> the firearm was her firearm, not Mr. Bolton's firearm. She
> subsequently told investigators that it was not her firearm, so Mr.
> Willstatter then became a witness because he was told one thing and
> now she was claiming something else. I say all that to say there's at
> least murky waters in terms of whose firearm this actually was.
>
>     My understanding is it was recovered from a hamper. It was
> within a bag within a hamper. I've had a chance to look at the
> discovery that Ms. Simon has provided to me and Mr. Bolton had—
> it was, like, some sort of card that had his identification, I can't
> remember if it was a debit card, was in that bag, but it was in, like,
> the front pocket of the bag, so it wasn't found next to the firearm,
> but in the same pocket, which is what led law enforcement to believe
> that it was his.

16

> So certainly, there's some questions as to whose firearm this
> actually was. Certainly, the DNA tests will be helpful to sort of point
> us in some direction, but in light of all that, we do think that there
> are conditions that could be set that could ensure the safety of the
> community and ensure that Mr. Bolton isn't a flight risk.

Initial Appearance Tr. at 9:21–10:17.

Despite being aware of these issues and having raised them at the outset of this criminal case, Bolton entered a knowing and voluntary guilty plea.[7] As a result, his Fourth Amendment Claim is waived. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (a defendant who pleads guilty "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea"); *United States v. Lebowitz*, 877 F.2d 207, 209 (2d Cir. 1989) ("The settled rule is that a defendant who knowingly and voluntarily enters a guilty plea waives all nonjurisdictional defects in the prior proceedings."); *Rivera v. United States*, No. 05 Cr. 1238 (SHS), 2011 U.S. Dist. LEXIS 60880, *4–5 (S.D.N.Y. June 2, 2011) (defendant who pleaded guilty waived Fourth Amendment challenge to warrantless seizure); *Czernicki v. United States*, 270 F. Supp. 2d 391, 393 (S.D.N.Y. 2003) (same).

Even if Bolton did not waive this claim, "Fourth Amendment claims are not cognizable in 28 U.S.C. § 2255 proceedings." *Indiviglio v. United States*, 612 F.2d 624, 625 (2d Cir. 1979). Thus, Bolton's claim "cannot be raised in a Section 2255 motion," unless he "lacked a full and fair opportunity to litigate such a claim at trial and on direct appeal." *Felder v. United States*, No. S3

---

[7] Bolton does not collaterally attack his conviction on the basis that his guilty plea was not knowingly or voluntarily made. Even if he did, such a claim is procedurally defaulted. *See Bousley*, 523 U.S. at 621 ("[T]he voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review."). It also contradicts the statements Bolton made in his plea allocution. See *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (statements made at a plea allocution "carry a strong presumption of verity"); *United States v. Gonzalez*, 970 F.2d 1095, 1100–01 (2d Cir. 1992) ("unsupported allegations" that contradict a prior statement made under oath are not enough to render a plea involuntary).

14 Cr. 604-2, 2023 U.S. Dist. LEXIS 126272, *10 (S.D.N.Y. Jul. 21, 2023). Bolton cannot meet that threshold. He had the opportunity to litigate his Fourth Amendment issues in federal court, but rather than doing so he chose to plead guilty.

Either way, Bolton's Fourth Amendment Claim is facially meritless. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. A probationer on supervised release, like Bolton, may be searched without a warrant and under a far less-demanding standard of "reasonable suspicion." *United States v. Lajeunesse*, 85 F.4th 679, 686 (2d Cir. 2023). Moreover, a probationer's "expectation of privacy is further diminished where he has consented to a search condition." *United States v. Jackson*, 663 Fed. Appx. 31, 33–34 (2d Cir. 2016) (summary order); *see also United States v. Knights*, 534 U.S. 112, 118, 121 (2001) (stating that the existence of a search condition is "a salient circumstance"); *United States v. Edelman*, 726 F.3d 305, 310 (2d Cir. 2013) ("[P]ersons on supervised release who sign [waivers] manifest an awareness that supervision can include intrusions into their residence and, thus, have a severely diminished expectation of privacy."). Although a "mere hunch" is insufficient, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

To begin, Bolton's Motion does not establish that he has a plausible claim of standing to raise his Fourth Amendment claim. Fourth Amendment rights "are personal rights that cannot be asserted vicariously." *Graham v. City of New York*, 869 F. Supp. 2d 337, 355 (E.D.N.Y. 2012) (citing *Alderman v. United States*, 394 U.S. 165, 174 (1969)). "A litigant asserting Fourth Amendment standing has the burden of establishing standing by a preponderance of the evidence,

and the fact that a party is legitimately on the premises when a search or seizure occurs is not enough for Fourth Amendment purposes." *Davis v. Abrams*, 2014 U.S. Dist. LEXIS 8742, *22 (E.D.N.Y. Jan. 23, 2014) (quotations omitted); *see also Minnesota v. Carter*, 525 U.S. 83, 90 (1998) ("one who is merely present with the consent of the householder may not [claim the protection of the Fourth Amendment]"). To the contrary, the facts alleged in the Motion undercut Bolton's ability to challenge the search of the apartment and seizure of the gun. For example, Bolton distances himself from both his girlfriend's apartment and the gun. *See* Mot. at 8 ("the gun was hers")[8]; *id.* at 6 ("the address that was searched was not my residence on file with probation and I never asked nor told probation that I was changing my address"). Thus, his own Motion undercuts his standing to raise his Fourth Amendment Claim.

Although the Court need look no further than the Motion's own allegations, even if Bolton had standing to assert his Fourth Amendment Claim, the record shows that Probation had a reasonable belief that he was in the apartment, and, under the terms of his supervised release and the Search Condition, law enforcement's search of the apartment was proper. For one, the fact that Probation's investigation led them to locate Bolton in his girlfriend's apartment suggests that they had a basis for believing he was there. As noted in the PSR, for example, Bolton told his probation officer that he was residing at his girlfriend's apartment in Yorktown, New York. PSR ⁋ 8. Additionally, Bolton's probation officer received information from the Peekskill Police Department that gave reason to believe that Bolton was engaged in narcotics trafficking and was keeping a firearm in his girlfriend's residence. PSR ⁋ 9. Moreover, less than a month before his arrest, Bolton submitted to drug testing which returned positive for marijuana—a VOSR

---

[8] The Government noted at the initial appearance on the VOSR matter that defendant's girlfriend did not have a gun permit. Transcript of Initial Appearance in *United States v. Bolton*, No. 16 Cr. 372, at 13:12–14 (S.D.N.Y. Apr. 18, 2022).

specification that he admitted to at sentencing. Bolton's significantly diminished expectation of privacy as a person on supervised release and his consent to the Search Condition foreclose his Fourth Amendment Claim.[9]

>   D.    The Sixth Amendment Claims Should Be Denied

To prevail on a claim of ineffective assistance of counsel, a defendant must: (1) demonstrate that counsel's performance fell below an "objective standard of reasonableness" under "prevailing professional norms"; and (2) "affirmatively prove prejudice" from the alleged dereliction in counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 687–88, 693–94 (1984). For the first prong of this test, "a reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Venturella*, 391 F.3d 120, 135 (2d Cir. 2004) (internal quotation marks omitted). As for the second prong, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The burden is on a defendant to establish both elements. *Id.* at 687.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). As the Supreme Court has explained:

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney

---

[9] Bolton was represented by three different lawyers through the course of his criminal proceeding and VOSR matter. None of them sought a probable cause hearing to challenge the charges or moved to suppress evidence. It is highly improbable that a Defendant with three separate lawyers would not have filed a suppression motion if such a motion was likely to succeed.

> observed the relevant proceedings, knew of materials outside the
> record, and interacted with the client, with opposing counsel, and
> with the judge. It is 'all too tempting' to 'second-guess counsel's
> assistance after conviction or adverse sentence.' The question is
> whether an attorney's representation amounted to incompetence
> under "prevailing professional norms," not whether it deviated from
> best practices or most common custom.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted). "There are countless ways to provide effective assistance in any given case." *Id.* at 106.

### 1.    The Suppression-Based Sixth Amendment Claim is Barred

Bolton's first ineffective assistance claim is barred because he entered a knowing and voluntary guilty plea and thus waived any ineffective assistance claims he might have had before entering his plea. "A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea." *Coffin*, 76 F.3d at 497; *see also Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) ("An ineffective assistance of counsel claim survives the guilty plea . . . only where the claim concerns the advice [the petitioner] received from counsel.") (internal quotation marks and citation omitted). He also confirmed that he told his counsel everything he knew about the case and that he was satisfied with counsel's representation of him. On this basis alone, the Suppression-Based Sixth Amendment Claim should be denied, and his self-serving statements to the contrary should not be credited. *See United States v. Martinez*, No. 09 Cr. 1022 (KMK), 2014 WL 7146846, at *8 (S.D.N.Y. Dec. 12, 2014) (Karas, J.) ("Courts have repeatedly rejected such self-serving, uncorroborated statements that contradict statements during a colloquy as a basis to challenge a sentence.") (citing *United States v. Hirsch*, 239 F.3d 221, 225 (2d Cir. 2001)).

Even if Bolton's Suppression-Based Fourth Amendment Claim were not barred, it is easy to see why reasonable counsel would not have filed a suppression motion. Bolton faced a hard choice. The more he distanced himself from his girlfriend's apartment and the gun—as he does in

21

his Motion—the more he would undermine his standing to challenge law enforcement's search of her residence or its seizure of the gun. Yet the more he sought to create standing, the more he would have admitted to Probation's basis for searching the girlfriend's residence and subjected the encounter to the significantly diminished expectation of privacy imposed by his supervised release conditions. Given the Search Condition and the circumstances of the search, rather than file a likely unsuccessful, if not frivolous, motion to suppress, Bolton agreed to enter a timely guilty plea. *See United States v. Abad*, 514 F.3d 271, 275–76 (2d Cir. 2008) ("counsel could not therefore have been ineffective for failing to make a motion that would have been futile"). In so doing, he obtained a 3-point base offense level reduction and was given a below-guidelines sentence. Under these circumstances, Bolton provides no basis for why counsel was constitutionally defective.

Finally, Bolton raises several more, barebones allegations in support of his ineffective assistance of counsel claim. None of these have merit. Although he says he requested a "speedy trial," Bolton neither alleges a Speedy Trial Act violation nor explains why such an argument is not waived. *See Cortez v. United States*, No. 05 Cr. 55 (ADB), 2011 WL 666245, 2011 U.S. Dist. LEXIS 14917, *16 (S.D.N.Y. Feb. 10, 2011) (petitioner's ineffective assistance claim based on alleged Speedy Trial Act violations related to issues before the petitioner's plea and were therefore waived). Bolton also acknowledged at his plea allocution that he understood that if he chose to plead not guilty, he would be entitled to have a speedy and public trial of his case, yet he forewent that right. Plea Tr. 23:12–15. Finally, Bolton's allegation that counsel did not do "anything [he] asked" is vague, unparticularized, and an improper basis to allege ineffective assistance.

### 2.    The Sentencing-Based Sixth Amendment Claim is Meritless

Bolton's second ineffective assistance of counsel claim relates to his counsel's performance at sentencing. Bolton falls far short of meeting *Strickland*'s "high bar." Not only are Bolton's allegations vague and unparticularized, they also contradict what his counsel actually did.

Bolton's counsel submitted a lengthy sentencing memorandum making several arguments for why Bolton should have a lower total offense level and lower criminal history category. *See supra* at § II.D. As this Court noted at sentencing, his counsel's sentencing submission was "[u]nsurprisingly . . . very well presented." Sent'g Tr. at 21:8–9. Indeed, counsel's arguments resulted in some of his objections being agreed to by Probation. *See, e.g.*, Sent'g Tr. 11:16–24. Bolton does not allege what "errors" in his PSR counsel did not raise (or raised ineffectively), nor does he explain how his offense level or criminal history calculation would have been lower but for counsel's ineffective assistance. On this basis alone, this claim can be dismissed.

Either way, Bolton cannot establish prejudice, as the Court issued a significantly below-guidelines sentence. Although the Court calculated Bolton's Guidelines range at 46 to 57 months, Sent'g Tr. at 36:24–37:1, it sentenced him on the 922(g)(1) charge to a below-guidelines 27 months. *Id.* at 43:6–9. This sentence was *within* the guidelines range of 21 to 27 months calculated in Bolton's sentencing submission (and which presumed a lower offense level and criminal history calculation than what the Court determined at sentencing). Although Bolton makes the conclusory allegation that he would have received an even lower sentence, the Court need not accept such allegations, and nothing he alleges shows how an even lower sentence could have been possible. *See Cooper v. United States*, No. 08 Cr. 356 (KMK), 2015 WL 9450625, at *10 (S.D.N.Y. Dec. 22, 2015) (a court "need not accept . . . uncorroborated, self-serving testimony" about alleged ineffective assistance of counsel resulting in a higher period of incarceration).

E.    Bolton's 2255 Motion Should Be Denied Without a Hearing

"[T]he filing of a motion pursuant to §2255 does not automatically entitle the movant to a hearing." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). To be entitled to a hearing, a defendant "must set forth specific facts supported by competent evidence, raising detailed and

controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).

As discussed above, all of Bolton's claims are waived, barred, or facially meritless. Moreover, the Motion is supported by vague, undetailed, and conclusory allegations. As a result, the Motion should be denied without a hearing. *See Blackledge*, 431 U.S. at 74 ("[C]onclusory allegations unsupported by specifics [are] subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *LoCascio v. United States*, 395 F.3d 51, 57 (2d Cir. 2005) ("Mere generalities . . . will not normally entitle the applicant to a hearing") (quotation marks omitted); *United States v. Aiello*, 814 F.2d 109, 113–14 (2d Cir. 1987) (stating that claims resting on "[a]iry generalities" and "conclusory assertions" cannot sustain a claim under section 2255); *United States v. Malcolm*, 432 F.2d 809, 812 (2d Cir. 1970) (concluding that a district court may deny petitioner's section 2255 motion without a hearing "where the allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false, or patently frivolous"); *Matura v. United States*, 875 F. Supp. 235, 237–38 (S.D.N.Y. 1995) (finding petitioner's conclusory assertions of ineffective assistance, without any allegations of fact to support the assertions, fail "to establish that his counsel's performance was deficient [and] . . . fail [ ] to overcome the presumption [under Strickland] that counsel acted reasonably").

## VI. Conclusion

For these reasons, the Court should deny Bolton's Motion without a hearing.

Dated:      White Plains, New York
            January 16, 2024

                            Respectfully submitted,

                            DAMIAN WILLIAMS
                            United States Attorney
                            Southern District of New York


            By:     _____
                            Reyhan Watson
                            Assistant United States Attorney
                            (914) 993-1965

## AFFIRMATION OF SERVICE

I, Reyhan Watson, affirm under penalty of perjury as follows:

1.      I am an Assistant United States Attorney in the Southern District of New York.

2.      On January 16, 2024, I caused a copy of the foregoing to be served on petitioner Eric Bolton via U.S. mail at the following address:

> ERIC BOLTON (Register No. 77347-054)
> FCI DANBURY
> FEDERAL CORRECTIONAL INSTITUTION
> ROUTE 37
> DANBURY, CT 06811

Dated: January 16, 2024
       White Plains, New York

_____
Reyhan Watson
Assistant United States Attorney